Good morning, your honors. May it please the court. My name is Lauren Hume and I represent the United States of America in these appeals. I'm going to seek to reserve five minutes of my time for rebuttal. We're here today because Alan Paulson died with an estate worth $193 million on which more than $11 million in estate taxes were originally owed. Now, 22 years later, I'm going to stop you right here. We have feedback coming through. I don't know if the other two judges can hear it. I can hear. Hey, I think the other two counsel need to move your your microphones. Let's let's see if that works. Thank you, your honor. We're here today because Alan Paulson died with an estate worth $193 million on which more than $11 million in estate taxes were originally owed. Now, nearly 22 years after Mr. Paulson's death, more than half of the estate tax liability remains unpaid, as well as millions of dollars in interest. The government brought this lawsuit in order to seek to collect as much of the outstanding estate tax debt as possible from persons who either controlled Mr. Paulson's living trust after his death or else received valuable assets from the living trust. The government's appeal presents the question whether successor trustees and trust beneficiaries may be personally liable for unpaid estate taxes under Section 6324A2 of the Internal Revenue Code. The government contends that the answer to this question is yes, and that this court should reverse the district court's contrary legal conclusions. This overarching question turns on two issues. First, whether the limiting phrase on the date of the decedent's death in the statute applies only to the verb it immediately follows, has, or also to the more remote verb, receives, which is separated from it by a comma. And second, whether a trust beneficiary is a beneficiary within the meaning of that term as used in the statute. Beginning with the first issue, the natural reading of the statute is that the limiting phrase on the date of the decedent's death modifies only the verb it immediately follows, has, and not also the verb receives. This is so for three reasons. First, this is a straightforward application of a rule of grammar, the rule of the last antecedent, under which a limiting phrase ordinarily applies only to the word or phrase that it immediately follows. Why, excuse me, why doesn't the series qualifier equally plausibly apply, which is what opposing counsel argues? Thank you, Your Honor. The series qualifier canon does not apply to this text because it requires a parallel series of verbs. For example, in the recent case Facebook versus Duguid, the Supreme Court was faced with a statutory text with two verbs in a row, store or produce, followed by a comma, followed by a limiting phrase using a random or sequential number generator. In that case, the verbs were in a parallel series, store or produce. The limited phrase was separated from both verbs by a comma, and thus equally applied to both verbs before the comma. By contrast here, receives is set aside by a comma by itself, and then there is the word or has on the date of the decedent's death. On the date of the decedent's death, immediately follows has the comma between receives and has prevents there from being a parallel series of verbs, and thus the series qualifier canon simply does not apply. And the other argument that opposing counsel makes is that if you read that language using the rule of last antecedent, it would have an absurd result because a remote recipient could end up being personally liable for more estate taxes and the value of the property received. What's your response to that? I have a multi-part response to that, Your Honor. First, in order to be personally liable under the first sentence of section 6324A2, one must fall within the six categories of person deemed liable under that statute. Second, one must also be a recipient of property from the decedent in some sense. Thus, in this case, three of the appellees are people who served as successor trustee to Mr. Paulson's living trust, and thus are clearly recipients of property from the decedent. And the others are beneficiaries as a result of the way that Mr. Paulson wrote his trust instrument. By contrast, there are hypotheticals in the appellee's briefs regarding potential bona fide purchasers being liable much further down the line. The second sentence of section 6324A2 makes clear that bona fide purchasers and security interest holders will not be personally liable and indeed will not even take subject to the estate tax lien. And by contrast, there's a recognition in that same sentence that subsequent transferees have the potential at least for some level of personal liability. Not only do they take subject to the estate tax lien, but in the event that they were to in turn transfer property onto a bona fide purchaser or a security interest holder, they would be subject to a like lien upon all of their personal assets. A lien upon all of one's personal assets is simply another way of saying one is personally liable for the debt. So this simply reinforces the government's view that it is possible for subsequent transferees to have some level of personal liability. But the hypotheticals that are raised in the appellee's briefs are simply not the situation presented in front of these court. We're trying to convey, we're trying to construe this language. So we do have to think about how it would apply in every case. And the opposing counsel says, so at the time of decision steps, the value of the property is $10 million. At the time of the receipt by the trustee, the value is $5 million. And so the trustee under the construction you're promoting would be personally liable for $10 million. And I think in the brief, the answer was, well, trust us, we're the government, we won't actually require that person to pay more than $5 million. But I don't think there was anything identified that would actually prevent that result. Is that correct? No, Your Honor, that's not correct. Inherent within the word received is the notion that one receives something at the time one receives it. So if one received by the time the successor trustees took over the trust, for example, in Your Honor's hypothetical, if the trust property that they received was worth only $5 million at the time they received it, their liability would not exceed $5 million. I'm sorry, Judge Warlock. I just want to ask one question. Am I correct that the only person in this case who would be personally liable under either reading of the statute is Michael Paulson? Yeah. Under the district court's ruling, as held by the district court, Michael Paulson was the only person who qualified because he was the, well, the only person named as a defendant in this lawsuit who qualified because- Qualified, right. So where is he? It seems to me he's the only one who actually got enough money to be able to pay the $10 million. And he's not in this lawsuit anymore. And it seems to me that the ground for the district court's dismissal of him was wrong. I don't understand why, simply because the IRS didn't respond to his request to be personally discharged, why that would be a reason that- It seems to me it's the exact opposite. He'd still be on the hook. Yet the government didn't even appeal that one. Your Honor, I'm not in charge of which issues the government chooses to appeal in a case. I will say a determination was made that because the district court found, as a matter of a factual finding, that Michael Paulson had requested a discharge in his capacities, both as executor and as fiduciary, and fiduciary being trustee of the living trust, that we were unlikely to be able to show clear error in that factual finding. The government's view is that the letter he submitted was ambiguous, and he in fact only did request discharge as executor. However, a determination was made that we would not be able to overturn the factual finding on that point. That being said, from the IRS's perspective, Michael Paulson did, while he was in position as trustee of the living trust, he made all of the Section 6166 payments that were required toward the estate tax debt. He made the first five initial interest-only payments, and then he made the first interest-in-principle payment as well. And it was only after Vicki Paulson and James Paulson had been appointed as successor trustees that the first payment was missed at that point. To return briefly to the on-the-date-of-the-decedent's-death argument, in addition to the rule of the last antecedent, there are two other key points. May I ask another question? So there's cases that have decided this question, that on the date of the decedent's death, the person has to either receive or have the funds in order to be personally liable. Are there any cases that have ruled with respect to this statute in the way that you prefer? No, there are not, Your Honor. To date, three lower courts in a total of four opinions, and that does include the district court below, have addressed the issue. Each of them has decided in the opposite-of-the-manner urge by the government. That being said, the government's position is that those opinions are not persuasive. They all ultimately derive from the tax court's 1959 decision in Englert v. Commissioner, in which the tax court falsely read ambiguity into Section 827B of the Revenue Code of 1939, one of the statutory predecessors to Section 6324A2. Specifically, that text, as the current statute reads, said in relevant part that one who receives, comma, or has on the date of the decedent's death, comma, property included in the gross estate under various subsections, that they may be personally liable for the estate tax. The tax court in that case, in its analysis of the statute, read that second comma out of the statutory text, the comma between death and property. But there's no question that property included in the gross estate is the object of both the verbs receives and has. So by reading out that comma, the tax court created ambiguity about whether the limiting phrase on the date of the decedent's death also applied to both of the two verbs in the series. Ms. Hamm, it seems odd. I mean, this statute or its predecessor have been in existence for 80 years or so, that we have such a paucity of case law, which is this small number of cases. I understand your argument why those aren't persuasive. It would seem the government must take this position that those who receive property from the trust have tax liability. Why has this not been litigated more? Is this a novel position the government's taking, or is it a novel position the taxpayers are taking? Neither position is novel. This has consistently been the government's opinion since these cases first began to be litigated. I don't know why so few of the cases have come to pass. I would guess because any number of things need to go wrong for it to get to the point where the government is suing trust beneficiaries in order to collect unpaid estate taxes. Unfortunately, I really can't shed any further light on why that is. I see that my time is running low. And so unless there are further questions directly about these issues, I would reserve the remainder of my time for rebuttal. All right. Thank you, counsel. Mr. Stanky. Thank you. May it please the court. My name is Glenn Stanky, and I'm appearing on behalf of Appellee Madeline Pickens. There is no dispute in this case that Ms. Pickens was not a beneficiary or a trustee as those terms are defined in the inclusion statutes 2034 through 2042. No issue about that at all. The appellate's argument is that the person's liable for the tax should not be defined by the inclusion statutes, but instead should be defined according to their ordinary meaning as provided in Black's Law Dictionary. It relies on Schindler-Elevator for that proposition, but that case provides that you use the ordinary meaning of a statutory term only if there is no textual basis for a narrower definition in the statute. Clearly, there's a strong textual basis in this statute for defining beneficiary and transferee much more narrowly than ordinary definitions. This is because Congress specifically incorporated into the text of Section 6324A2 all of these inclusion statutes. What that does is basically give instructions to define the person liable for the tax in accordance with those definitions in the inclusion statutes. If the person for the tax was defined differently than they're defined by the inclusion statutes, that same person would be defined two different ways in the same statute. Now, appellate concedes that there was a strong textual support for excluding trust beneficiaries from the definition of beneficiaries or transferees in the 1939 version of the statute, but contends that that support is lacking in the current version. I'm sorry, Mr. Stanky, if I may interrupt you for a moment. You started your remarks by saying there was no dispute that Ms. Dickens was not a beneficiary or a transferee, which confused me because I thought, then why did she receive $19 million worth of property? But then, as your argument unfolded, if I understand it correctly, what you're arguing is that she does not fall within your interpretation of those terms, how they should be defined, but she did benefit from this state. She received a substantial amount of property and money. Yes, she received the distribution as a trust beneficiary, but Section 6324A2 lists six categories of persons that are liable for the tax. These are the persons who, on the date of the decedent's death, had or received property that was included in the decedent's gross estate under Sections 2034 through 2042. These are what we refer to as the inclusion statutes. Every court that's ever addressed the issue has determined that the terms beneficiary and transferee, as they appear in Section 6324A2, are defined according to the inclusion statutes. The argument, as I understand the argument of the government, is that in the earlier statute, there was a one-to-one correspondence between the categories of persons and the statutes. Here, there are nine different statutes, I think, that are listed. There's no one-to-one correspondence, and there's really no clues in the text. If we take it at face value, that beneficiary should mean, for instance, beneficiary of a life insurance policy, which would seem to be sort of a counterintuitive definition of that. Can you respond to that, the government's argument on that? Section 6324A2 lists these six categories of persons liable for the tax, and each one of them directly corresponds with a particular inclusion statute. The term beneficiary under Section 6224A2 corresponds directly with Section 2042, which includes in the decedent's gross estate life insurance on the decedent's life. When the courts look at the overall statutory scheme, they determine that the use of the term beneficiary in Section 632042 means life insurance beneficiary, because that's who Section 2042 refers to. It's very clear when you see who is imposed with the tax liability and the statutes that include their property in the decedent's gross estate. These are properties that are now owned by other people. If they were owned by the decedent at the time of his death, they would be included in his gross estate under the general principles of Section 2033. These are special circumstances. The decedent doesn't own these properties, but he has a substantial interest in them at the time of his death. We need these inclusion statutes to make sure that the tax is imposed on those properties as if he did own them. Now, as I said, the appellant concedes that there is a strong textual basis for excluding trust beneficiaries from the terms beneficiaries and transferees under the 1939 version of the statute, but contends that there is no such basis in the current statute. The tax court in Garrett said these two statutes, the 1939 version and the current version, are substantively identical, and indeed they are. The only difference between the two is that the current statute refers to nine inclusion statutes, where the 1939 version referred to only six inclusion statutes. This is because three specific types of transfers that were addressed by a single statute under the 1939 code were broken out into three separate sections in the current code, but the statutory language is the same. They are substantively the same, and it's clear that section 63-2482 contains the same textual support for defining beneficiaries and transferees in exactly the same way that it was in 1939. Mr. Stanky, what's troubling or confusing to me about your argument is that it would seem to essentially gut the purpose of the statute. If somebody who is a trust beneficiary can receive the entire corpus of the trust, under your argument, they're not a beneficiary, so they can have it either at the time of the decedent's death or even if they receive it later, and there's no tax consequences. How would there ever be any tax consequences on one of these trusts? Well, this statute creates exactly the same situation that already exists with respect to probate property. A state beneficiary isn't liable for the tax. The executor is liable for the tax because the property can only reach the beneficiary if it passes through the hands of the executor. By putting personal liability on the executor, the government gets the taxes paid. This does the same thing. It puts the liability on the trustee because the trustee must make a provision for the payment of the tax before it makes the distribution of the trust property. And if they don't do it, they have the personal liability. What if the government chose to make sure that it could collect the tax because if the trustee dissipated the assets and passed them on to the beneficiaries and then it didn't have anything from which the government could collect? It seems the government has enacted a statute to give it a lien so that it can recover this money. Keep in mind, there's also the general estate tax lien imposed by Section 6324A1 that puts a lien on all property that's included in the gross estate. The problem here is that that lien only lasts for 10 years and the government didn't bother to try to collect the tax until that lien had expired. Isn't that period told when there's a 6166 plan for repayment? No, no. There are a number of cases on that period. The 10-year period on the lien expires on the 10th anniversary of the decedent's death, no matter what. So that's why they didn't bring an action under 6324A1. They didn't have a lien anymore. They have to rely on this section that imposes liability on the trustee, and they're trying to make that fit to a trust beneficiary. But that violates 88 years of consistent authority. You're talking about maybe three cases over 80-something years? I can't describe it as anything other than that. Well, there are actually more than that. It is true that Higley was the one in 1934, and we also had Englert in 1915. When I read Higley and read the statute that it described, it was entirely different. I couldn't draw anything from Higley to support your argument. Well, the statute is different, but the principle that the statute that includes that person's property in the gross estate is the one that defines the person liable for the tax is a principle that goes all the way back to Higley. Higley said that trust beneficiaries are not beneficiaries as that term is used in the statute that imposes liability, just like 6324 does. That principle goes back 88 years. Are you going to give eight minutes to Mr. Polonyi? I'm sorry. I should wrap it up. Well, I didn't see the beginning of the clock, but did they just give you seven minutes to start, or did they give you the whole 15? Yes, only seven. Oh, only seven. Okay, then. Okay, go ahead. Answer the question, and then I think we should. I think I've answered that question. All right. Thank you. So we'll go to Mr. Lawler. Oh, your Honor, this is John Maloney. I'm the attorney for the successor trustees, Vicki Paul and Crystal Christensen. Let me ask you a preliminary question. Did Vicki and or Crystal receive, were they trust beneficiaries? Vicki Paulson was not. Crystal Christensen received a distribution from Mr. Michael Paulson when he was the original trustee. Okay. All right. You may proceed. Sure, Your Honor. I'd like to focus, if I could, not on the federal internal revenue sections at the beginning, but rather on the alternative approach the government has taken to find some justification for converting a debt of the estate into a debt of the living trust or the trust estate. And they have attempted to do this by invoking the California probate code, in particular, sections 19,000. And the district court permitted this, and that's why we think that was erroneous and it should be reversed. Just a couple of issues here. The question is, how can you convert a debt of the estate into a debt of an entirely separate entity, the living trust? The California probate code says you can, but you're limited to what's provided for in section 19,000. And in that section, there's two categories, claims of predators of the estate and expenses of administration of the estate. Now, it's conceded by the government, and it's true as a matter of interpretation, which is laid out in the brief, that estate taxes are not claims of predators against the estate, and they're not expenses of administration of the estate. So what are we left with? Well, the government says the provision in the California probate code, section B, that talks in terms of priority of debts. And that section, 19,000 B, cross-references section 11420A. Both of those sections strictly deal with priority of debts. They don't establish debts. They don't say this is how a debt is established, who owes what to whom, or how you can collect it. It's simply a statute that lays out the priority of debts. Now, we all know that estate taxes are a debt of the estate. They are not a debt of the trust. There has to be something that makes that conversion possible. The only statute in California that makes that possible is section 19,000 A that we just reviewed. Claims of predators of the estate or expenses of administration. Now, these priority states, the priority of debt statutes, don't create any authority for creating debts. And so, very simply, tell us how debts are going to be paid. Now, the government has attempted to say there's some kind of constitutional problem, some kind of supremacy issue involving preemption. Now, they never raised it in the court below, so it's weighed. But if we look at the substance, what we see is the following. There is absolutely no conflict between U.S.C. 3713, which is the federal statute, and the priority statutes that I just addressed under the California probate code. It can be read in harmony. There's no such conflict. And if there's no conflict, there's no question of preemption or the need for supremacy. The other dimension, of course, and this is applicable to both the California probate code and your interpretation of the federal estate code, is the rule of lenity, which you discussed in Boyd. And that is, if you have a situation where you can say there's some kind of ambiguity, that yes, all the cases interpreting the statute say one thing, but maybe there's an issue that it should be read a different way. And if you're willing to say, wait a minute, we're not sure of the statutory purpose. Now, the tax court here has quite clearly told us that the reason for the important words on the date on which someone receives the property, meaning the date of the deceased's death, that that's an important limitation. And it's an important limitation because it, in effect, makes the person who receives the property liable for the taxes. I mean, that's the purpose. But if we take all of that and say, we're confused, we come back to the rule of lenity and a matter of fairness to the taxpayer. And what we say here, if there's any ambiguity, if it's a close call, it goes to the taxpayer, because this is not the time in which you say you didn't know it, but you're subject to all this tax, notwithstanding all the jurisprudence going your way and all the decisions that favor. So the rule of lenity, I think, applies both in terms of interpreting the California probate code, as well as where we are with 6324 under the Internal Revenue Service Code. Mr. Mahoney, I didn't see any citations to California Supreme Court interpreting the probate code, and we would hesitate to interpret it in the first instance over what the California courts would say. Is there any California case law? And if there isn't, is this something that should be certified to them? Your Honor, I thought we had cited authority where we could, in terms of the interpretation of the California code. I'm sort of looking through it now. Rather than take up the time, if there are cases that are cited in our brief, if not, then we would be glad to submit them if they exist, but if we've cited the appropriate case law. I would just mention, obviously, this has not been a highly contested issue under California law. It does have some unique circumstances that have been previously discussed where you have a situation where, in effect, the debt seems to have arisen out of a payment of a federal or non-payment of a federal state tax since California has done away with its own state state tax. But I can't give you any more guidance than that. Thank you. All right. Thank you, Mr. Maloney. Ms. Hugh. Thank you, Your Honors. I would just briefly like to address three aspects of the government's appeal before moving on to the cross appeal. First, Judge Beatty was correct in her questioning of Mr. Stanky that the interpretation urged by the appellees of Section 6324A2 would, in fact, gut the purpose of that statute. Although Mr. Stanky makes the point that it's effectively treating probate and non-probate beneficiaries in the same manner, there are strong reasons to believe that Congress intended to provide stronger protections for government or stronger government enforcement tools outside of the probate context for two reasons. One, there's no judicial supervision outside of the probate context, and thus the trustee would be able to distribute assets without having a probate judge as an intermediary to ensure that estate taxes are paid before such distribution occurs. And second, in the probate context, there will be an ordinary tax lien, a Section 6321 tax lien that will attach to property that was within the probate estate of the decedent and will follow potentially the property for a much longer time than what the estate tax lien will do. Second, Mr. Stanky's allegation that the IRS didn't bother to try to collect in this case is simply wrong. Although he's correct that the estate tax lien is not told during the pendency of a Section 6166 election, the IRS is barred from engaging in any enforced collection while there is still a Section 6166 election in place. Here, the IRS moved to terminate the 6166 election within 13 months of the first missed payment, and Mr. Maloney's client, Vicki Paulson, then spent a year challenging that termination in tax court before finally conceding that the termination was proper. During that year, the IRS had another year that it could not collect or engage in any enforcement, including even filing a lien notice. And then Ms. Paulson and Ms. Christensen both spent another year in tax court challenging collection due process rights, which was ultimately dismissed for lack of jurisdiction, but was another year in which the IRS was unable to engage in any sort of collection mechanisms. Finally, turning to the rule of lenity, the rule of lenity should not be applied in this case. It's not been consistently applied by either the Supreme Court or this court. Over your time, do you want to get to the response to the Cal Probate Code, Section 19001? Thank you, Judge Wardlaw. Yes, I would. I'd like to just start briefly with Mr. Maloney's contention that there's been a waiver. There's been no waiver in this case. All the cases that Mr. Maloney cites in favor of a waiver for an argument presented for the first time on appeal were cases in which there was an appellant raising a new argument in appeal. By contrast, this court in cases like EEOC versus Union Bank, 408 F2D 867, Ninth Circuit 1968, held that an appellee may raise even a new legal argument in support of a favorable judgment of the district court. That's also consistent with Supreme Court precedent holding that a correct decision should be affirmed, even if the lower court's reasoning is incorrect. Turning to the merits of the cross appeal, there is a direct conflict between the combination of Section 19001B and 11420 of the California Probate Code and the Federal Priority Statute 31 U.S.C. 3713. Section 19001B specifically provides that the priority of payment of matters set forth in Section 11420 shall be applied to trusts in the same manner as it is applied to estates. Section 11420 in turn recognizes that debts owed to the federal government, including but not limited to estate tax debts, shall be given the preference they have under federal law. And federal law in turn provides that debts owed to the federal government shall be paid first in the event of estate insolvency. There's no question there was estate insolvency here, and thus the estate tax debt should be paid first. And under Section 19001B, the federal government should have the same ability to collect this debt as it would have in the probate context. And the rule of lenity has no application here because this is a general collection statute and not a statute specifically levying taxes. The government's argument would apply equally to other types of debts owed to the federal government by a probate estate and not solely estate taxes. Unless there are further questions, I thank the court for its consideration and I will rest. All right. Thank you, counsel. United States v. Paulson will be submitted and this session of the court is adjourned for today. Thank you. Hello. This court for this session stands adjourned.
judges: WARDLAW, IKUTA, BADE